PER CURIAM.
The sole question upon this appeal is whether a recall election petition was invalid, so as to require annulment of the recall election based thereupon. The District Court denied a temporary injunction enjoining the recall election; hence the appeal to this Court.
Plaintiff Holt was the duly elected School Board Member from Ward Three, Vernon Parish, Louisiana. A petition was circulated to remove him by recall election under the provisions of LSA-R.S. 42:341 to 42: 357.
Under LSA-R.S. 42:342, the recall petition must be signed by “not less than twenty-five per centum of the number of the total electors of the voting area wherein and for which a recall election is petitioned.” ;!
According to the certificate of the Registrar of Voters attached per LSA-R.S. 42:-343, there were 801 registered voters in Ward Three. Both parties agree that statutory requirements should be met by the signature of not less than 201 electors. The petition was purportedly signed by 216 voters.
On appeal, plaintiff attacks thirteen signatures as invalid because the X-marks of the voters were placed on the petition by the circulator of the petition instead of by the voters themselves; and three of the signatures as those of persons who were not actually residents of Ward Three of Vernon Parish, although registered to vote therein.
For appellate purposes, therefore, there is no dispute as to the signatures of at least 200 of the petitioners; and taking the most favorable view possible to plaintiff’s claim that the petition is invalid, it is immaterial that the X-marks of the 13 voters “unable to write” were affixed by the circulator of the petition rather than by themselves personally as allegedly required by LSA-R.S. 42:344, if plaintiff’s attack fails as to the validity of the signatures of any of the three persons allegedly signing the petition as registered voters of Ward Three of Vernon Parish, although not actually residing therein; for if any one of these signatures is valid, it together with the 200 admittedly valid signatures will total the statutory minimum of 201 signatures required to sustain the validity of the petition.
Plaintiff urges that Geraldine Bush, Rena Ferguson, and W. H. Ferguson were residents of Ward Two, and therefore could not validly sign the Ward Three recall petition, even though they were (per the Registrar’s certificate) registered voters of Ward Three. The sole proof educed to prove that these persons did not reside in *491 Ward Three was the testimony of a Deputy Assessor to the effect that their property was assessed in Ward Two and that a homestead exemption was claimed by them upon said property. Mrs. Rena Ferguson was called to the stand and positively testified that she lived in Ward Three, with her husband W. H. Ferguson (whose property was assessed according to the previous testimony in Ward Two, upon which he claimed a homestead exemption).
The sole effect of this testimony is not that these parties resided in Ward Two and did not reside in Ward Three, but simply that they claimed a homestead exemption upon Ward Two property. Mrs. Rena Ferguson positively testified that she resided in Ward Three, and the record is silent as to any evidence that these parties did not actually reside in Ward Three.
For instance, it might be just as logical to infer that these parties incorrectly claimed homestead exemptions on property located in Ward Two, although actually residents of Ward Three; as to educe that they incorrectly registered themselves as voters of Ward Three, although actually living in Ward Two. We do not think plaintiff has borne his burden of proving that these parties were not residents of Ward Three, and in fact Mrs. Rena Ferguson (although called by plaintiff) positively testified that she resided in Ward Three (Tr-121), which testimony is not contradicted.
We think therefore the record shows that at least 201-203 qualified electors of Ward Three signed the recall petition; that is, sufficient to satisfy the statutory minimum of 201.
It also appears probable that the name “W. H. Ferguson” is included both among the 3 signatures attacked as those of nonresidents and also among those 13 allegedly invalid signatures by mark. With this duplication even if plaintiff is correct on every ground, only fifteen signatures of the 216 in the petition would be removed, leaving 201 admittedly valid signatures, the minimum sufficient to sustain the validity of the petition.
For the above and foregoing reasons, we must affirm the District Court’s decision.
Affirmed.